FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 22, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OOH! MEDIA LLC, a Washington limited liability company, and KEVIN "TED" CARROLL, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>SPOKANE TRANSIT AUTHORITY, a Washington municipal entity, and SUSAN MEYER, individually and as chief executive officer of Spokane Transit Authority,<br><br>    Defendants. | No. 2:19-CV-00335-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE** |

Before the Court are Plaintiffs' Motions for Partial Summary Judgment, ECF Nos. 40, 44, and 57 and Defendants' Motions for Partial Summary Judgment, ECF Nos. 45 and 49. A hearing on the motions was held on September 11, 2020 by videoconference. Plaintiffs were represented by William C. Schroeder and Jeffrey Finer; Defendants were represented by John Riseborough, Nicole Luth, Matthew Niemela, and Brant Olson.

//

//

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 1**

## Motion Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

//
//
//
//
//

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 2**

## Background Facts

Plaintiffs Ooh Media! and Ted Carroll, owner of Ooh Media!, had a contract with Defendant Spokane Transit Authority[1] to procure, place, and remove third-party advertisements on the sides of Defendant's buses. Under the contract, Plaintiffs made the initial determination of whether a proposed ad complied with STA's ad policy. If they were unable to make a determination, the decision was referred to the Director of Communications. Defendant Susan Meyer, STA's Chief Executive Officer had the final word on the ad's content.

Beginning in 2011, problems emerged regarding whether certain advertisements could be placed on the buses. STA adopted its current Commercial Advertising Policy ("Ad Policy") in 2012. The Ad Policy permits advertising space for only two types of ads: (1) commercial and promotional advertising; and (2) public service announcements.

A disagreement arose when a labor union wanted to place an ad on STA's buses. In 2016, Amalgamated Transit Union ("ATU") Local 1015 emailed Plaintiffs about purchasing ad space on STA buses. Plaintiffs responded to ATU that the proposed ad did not meet STA's Ad Policy. ATU then sent a letter to STA, indicating its concern that the Ad Policy was anti-union and possibly violated the First Amendment. As a result, STA officials met with ATU officials. STA officials asked ATU to submit an ad copy to Plaintiffs with the goal of creating an ad with acceptable content.

ATU then submitted a proposed ad to Plaintiffs. Plaintiffs approved the ad and informed ATU they were ready to move forward with the ad and offered a pricing rate. Pursuant to STA's request, Plaintiffs forwarded a copy of the proposed ATU ad to STA. STA asked Plaintiffs whether they believed the ATU ad

---

[1] Defendant is a public transportation benefit authority organized under Washington law. It provides public transportation services in Spokane County.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 3**

was allowable. Plaintiffs eventually responded to STA that they believed the ad qualified as an acceptable ad under STA's Policy. STA responded that Plaintiffs were incorrect. Plaintiffs then informed ATU there would be a delay in approval of the ad.

On November 16, 2017, STA terminated Plaintiffs' contract because of Plaintiffs' "repeated errors in applying the ad policy to proposed ads." It also refused to allow ATU to place ads on its buses.[2]

Plaintiffs brought this lawsuit asserting three claims: (1) First Amendment retaliation claim; (2) tortious interference with business expectancy claim; and (3) a claim for declaratory action under Wash. Rev. Code § 7.24.

## First Amendment Claim

As a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Even so, a state as an employer has an interest in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. of 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968). This is because the state as an employer has an interest "in promoting the efficiency of the public services it performs through its employees." *Id.* As a result, "a governmental employer may impose certain restrictions on the speech of its employees, restrains that would be unconstitutional if applied to the general public." *Id.*

---

[2] ATU sued STA in district court, alleging violations of its rights under the First and Fourteenth Amendment. *Amalgamated Transit Union Local 1015 v. Spokane Transit Auth.*, 929 F.3d 643, 649 (9th Cir. 2019). The Circuit concluded that STA unreasonably applied is Ad Policy in rejecting ATU's ad. *Id.* at 655-657.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE * 4**

1  Plaintiffs urge this Court to view its speech as private individual speech.
2  Defendants assert that Plaintiffs were not speaking as private citizens; instead, they
3  were speaking as an independent contractor and thus, the proper test to apply is set
4  out in the *Pickering/Garcetti* line of cases.
5  In evaluating whether a party should be considered a public employee, the
6  Court considers whether the relationship between the parties is analogous to that
7  between an employer and employee and whether the rationale applies for balancing
8  the government's interest in efficient performance of public services against the
9  public employee's speech right. *Clairmont v. Sound Mental Health*, 632 F.3d 1091,
10 1100 (9th Cir. 2011). An independent contractor who provides services to the
11 government is generally treated like a public employee for purposes of determining
12 whether the contractor has alleged a violation of their First Amendment rights. *Id.*
13 at 1101. The Ninth Circuit has instructed that when a business vendor operates
14 under a contract with a public agency, its First Amendment retaliation claim under
15 § 1983 is analyzed using the same basic approach the court would use if the claim
16 had been raised by an employee of the agency. *Id.* (citation omitted).
17 Here, it is undisputed that section 1.10 of the contract between Plaintiffs and
18 Defendant STA specifically indicated that Plaintiffs would be acting as an
19 independent contractor. Based on this language and based the guidance from the
20 Ninth Circuit, the Court finds that the proper lens to view Plaintiffs' speech is as an
21 independent contractor, and thus, the proper test to apply is the *Pickering/Garcetti*
22 line of cases.
23 In *Garcetti v. Ceballos*, the U.S. Supreme Court set forth a sequential five-
24 step inquiry that expanded the *Pickering* test used to determine whether a public
25 employee established a First Amendment retaliation claim. 547 U.S. 410, 421
26 (2006). This test asks: (1) whether the plaintiff spoke on a matter of public
27 concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3)
28 whether the plaintiff's protected speech was a substantial or motivating factor in

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 5**

the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech. *Id.*

### (i) *Matter of Public Concern*

Generally, courts are to define the scope of the public concern element broadly and adopt a liberal construction of what an issue of public concern is under the First Amendment. *Clairmont*, 632 F.3d at 1103 (quotation omitted). In doing so, courts should use the framework set forth in *Connick v. Myers*, which reviews "the content, form, and context of a given statement, as revealed by the whole record." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). Content is generally understood to be the "greatest single factor in the *Connick* inquiry." *Id.* (quotation omitted). In this regard, speech that helps the public evaluate the performance of public agencies addresses matters of public concern. Although not dispositive, a small or limited audience weighs against a claim of protected speech. *Id.* (citation omitted). For example, when speech takes the form of an internal employee grievance, and is not presented to the public, that form "cuts against a finding of public concern." *Id.* (quotation omitted). Finally, when a public employee's contested speech occurs in the context of an internal power struggle or personal employment grievance, this will mitigate against a finding of public concern. *Id.*

Whether speech is a matter of public concern is a question of law to be determined by the court. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019). Plaintiffs bear the burden of showing that the speech addressed an issue of public concern. *Id.*

Here, Plaintiffs have not shown their speech related to a matter of public concern. Their speech in approving or supporting a particular ad did not deal with the functioning of the government; did not help the public evaluate the

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 6**

performance of public agencies; and did not discuss threats to public safety. *See Clairmont*, 632 F.3d at 1104. Moreover, it appears that the form of the speech was emails that were sent internally and was not presented to the public. *See Desrochers v. City of San Bernardino*, 572 F.3d 703, 709-10 (9th Cir. 2009). This type of speech "cuts against a finding of public concern." *Id.* at 715. The context and point of Plaintiffs' speech were not to bring "to light a potential or actual discrimination, corruption, or other wrongful conduct by government officials." *See Clairmont*, 632 F.3d at 1104 (citation omitted). Rather, it was simply Plaintiffs' interpretation of its own and STA's Ad Policy. Plaintiffs never indicated they believed the union's proposed ads deserved First Amendment protections or that STA was violating the union's First Amendment rights by rejecting the proposed ad. As such, Plaintiffs' First Amendment claim fails as a matter of law.

(ii) *Private or Public Citizen*

Additionally, Plaintiffs' speech is not protected by the First Amendment because it was in the context of performing their official job duties. *See id.* (citing *Garcetti*, 547 U.S. at 426). By sending the emails in supporting or approving the union's ad, Plaintiffs were not speaking or acting as private citizens. Rather, in the course of offering to sell ad space on STA buses, in evaluating the ad for content compliance according to the policies, in deciding whether to run the ad, and in advising STA and the union that they believed the ad was acceptable, Plaintiffs were operating within the confines of their contract with STA. There simply would be no other reason to make their "speech." *See Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008) ("[S]tatements are made in the speaker's capacity as a citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform."). In sending the emails, Plaintiffs were carrying out their obligations under the contract of screening proposed ad content, making a compliance determination, and expressing their compliance conclusion.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 7**

Because of this, Plaintiffs' First Amendment claim fails as a matter of law.

## Qualified Immunity

Individual defendants named in a § 1983 action may raise the defense of qualified immunity. Qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015) (quotation omitted). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 663 (2012)). This means that existing precedent must have placed the statutory or constitutional question beyond debate. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quotation omitted).

Thus, the qualified immunity analysis involves two steps. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A district court must determine whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional rights and must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Courts may grant qualified immunity on the ground that a purported right was not "clearly established" by prior case law without resolving the often more difficult question of whether the purported right exists as all. *Id.* at 236.

Plaintiffs have the burden to overcome a defendant official's qualified immunity by showing that those rights were clearly established at the time of the conduct at issue. *Davis v. Scherer*, 468 U.S. 183, 196 (1984).

Because the Court has concluded that Plaintiffs have failed to show that their First Amendment rights were violated, it is not necessary to determine whether that right was clearly established. Even so, the Court finds that Defendant Meyer is

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE * 8**

entitled to qualified immunity because the First Amendment right asserted by Defendants was not clearly established. As the Court sees it, the "clearly established" question is whether it was sufficiently clear to put Defendant Meyers on notice that, when she terminated Plaintiffs' contract because she perceived they were erroneously interpreting STA's Ad Policy, she would have violated their First Amendment rights. The answer to this question is no.

Plaintiffs rely on *Metro Display Adver., Inc. v. City of Victorville, et al.*, 143 F.3d 1191, 1195-96 (9th Cir. 1998) to assert it was clearly established that a public transit company cannot retaliate against a lessee of its advertising space for pro-union ad content. They also rely on *Bigelow v. Virginia*, 421 U.S. 809 (1975) to assert it was clearly established that speech is not stripped of First Amendment protection merely because it appears in the form of paid, commercial advertisement.

Neither of these cases, however, clearly establish that a transit service would violate its advertising contractor's First Amendment rights if it rejected a third-party ad that the contractor had previously approved. First, *Metro Display* was a case involving blatant viewpoint discrimination. *Metro Display*, 143 F.3d at 1195. At best, the *Metro Display* case clearly establishes that city council members violate the First Amendment if they regulate the viewpoint of bus shelter advertisements. *Id.* at 1195. In this case, however, there is nothing in the record to suggest that Ms. Meyers engaged in viewpoint discrimination. *See Amalgamated Transit Union Local 1015 v. Spokane Transit Auth.*, 929 F.3d 643, 650, 656 n.11 (9th Cir. 2019) (Judge Quackenbush found that STA did not engage in viewpoint discrimination, and the Ninth Circuit declined to address whether STA's rejection of the ad was motivated by viewpoint discrimination).

Moreover, while *Bigelow* held that advertising is not stripped of all First Amendment protection, it noted that it may be subject to reasonable regulation that serves a legitimate public interest. *Bigelow* 421 U.S. at 825. It declined to decide,

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 9**

however, "the extent to which constitutional protection is afforded commercial advertising under all circumstances and in the face of all kinds of regulation." *Bigelow* 421 U.S. at 826. *Bigelow* does not provide the level of specificity required by *al-Kidd* to put Defendant Meyer on notice that her allegedly wrongful conduct would have violated Plaintiffs' First Amendment rights.

Finally, in order to defeat qualified immunity where the *Pickering/Garcetti* test is applicable, a plaintiff must show that it was clearly established that the speech at issue was on a matter of public concern and the employee's speech interests outweigh the state's legitimate administrative interests. *See Rivero v. City and Cty. of San Francisco*, 316 F.3d 857, 865 (9th Cir. 2002). Here, Plaintiffs have not shown that it was clearly established that an independent contractor's rejection or acceptance of an ad pursuant to the governmental policy was speech on a matter of public concern.

As such, Defendant Meyer is entitled to qualified immunity.

## Supplemental Jurisdiction

28 U.S.C. § 1367 grants federal courts supplemental jurisdiction over state law claims. District courts may decline to exercise such supplemental jurisdiction where: (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstance, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). District courts may decline to exercise jurisdiction over supplemental state law claims in the interest of judicial economy, convenience, fairness, and comity. *Smith v. Lenches*, 263 F.3d 972, 977 (9th Cir. 2001).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims because it has dismissed the claim over which it had original jurisdiction. The remaining state law claims would be better addressed in

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE** * 10

state court.

Accordingly, **IT IS ORDERED:**

1. Plaintiffs' Motion for Partial Summary Judgment – Affirmative Defenses, Nos. 6, 7, and 8 (No First Amendment Issue), and Nos. 13, 15, and 17 (Qualified Immunity, ECF No. 40, is **DENIED**.

2. Plaintiffs' Motion for Partial Summary Judgment – Defendant Spokane Transit Authority's Counterclaim – Doctrine of Account Stated, ECF No. 44, is **DENIED**.

3. Plaintiffs' Motion for Partial Summary Judgment – Affirmative Defenses No. 6 and 7 to Defendant Spokane Transit Authority's Counterclaim, ECF No. 57, is **DENIED**.

4. Defendants' Motion for Summary Judgment – First Amendment Retaliation, ECF No. 45, is **GRANTED**.

5. Defendants' Motion for Summary Judgment – Qualified Immunity, ECF No. 49, is **GRANTED**.

6. Plaintiffs' Motion to Exclude Portions of the Proposed Testimony of Shelley Lewis, MA, CRC, CLCP, ABVE/D, ECF No. 55, is **DENIED**, as moot.

7. Defendants' Motion to Exclude Plaintiffs' Expert Witness Colleen McMahon's Testimony under *Daubert*, ECF No. 61, is **DENIED**, as moot.

8. Plaintiffs' Motion to Exclude Untimely Disclosed Opinions of Shelley Lewis, ECF No. 73, is **DENIED**, as moot.

9. Defendants' Motion to Strike Plaintiffs' Reply Brief [ECF #99] Or, Alternatively, for Leave to File Sur Reply, ECF No. 102, is **DENIED**, as moot.

10. Defendants' Motion to Expedite, ECF No. 103, is **DENIED**, as moot.

11. Defendants' Motion to Strike, ECF No. 105, is **DENIED**, as moot.

12. All other pending motions, ECF Nos. 111, 112, 113, are **DENIED**, as moot.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE \* 11**

13. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiffs on the First Amendment claims.

14. The remaining state law claims are dismissed without prejudice.

15. The parties' Joint Motion to Suspend Remaining Pretrial Deadlines and Schedule Status Conference, ECF No. 117, is **DENIED**, as moot.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, enter judgment, provide copies to counsel, and **close** the file.

**DATED** this 22nd day of September 2020.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING CASE WITHOUT PREJUDICE** * 12